UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| WILLIAM V., SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:20-cv-1666-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff William V., Sr.  ("Plaintiff"), brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 20).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 15, 18. Plaintiff also filed a reply brief. *See* ECF No. 19. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 15) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 18) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for DIB on December 6, 2017, alleging disability beginning January 13, 2015 (the disability onset date), due to a a back injury and coronary artery disease. Transcript ("Tr.") 107-108, 170-171, 203. Plaintiff's claim was denied initially on March 7, 2018 (Tr. 109-13), after which he requested an administrative hearing (Tr. 116-117). On October

31, 2019, Administrative Law Judge Mary Mattimore (the "ALJ") held a hearing in Buffalo, New York. Tr. 11, 49-95. Plaintiff appeared and testified from Olean, New York, and was represented by Lewis Schwartz, an attorney. Tr. 11. Jay Steinbrenner, an impartial vocational expert ("VE"), appeared and testified telephonically. Tr. 11.

On November 25, 2019, the ALJ issued a partially favorable decision finding Plaintiff disabled beginning on the date of the decision, November 25, 2019, and not disabled between January 13, 2015 and November 24, 2019. Tr. 11-21. On October 13, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-5. The ALJ's November 25, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

## II.    The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in her November 25, 2019 decision:

1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.

2.  The claimant has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  Since the alleged onset date of disability, January 13, 2015, the claimant has had the following severe impairments: degenerative disc disease of the lumbar and thoracic spines with radiculopathy, spondylosis, and myositis, status post thoracic fusion, and obesity (20 CFR 404.1520(c)).

4.  Since January 13, 2015, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  Since January 13, 2015, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a)[1] except he can lift and or carry a maximum of 5 lbs.; never reach overhead bilaterally; never climb ropes, ladders, scaffolds; frequently operate foot controls bilaterally; frequently reach in other directions (front and laterally) bilaterally; occasionally push and pull bilaterally; occasionally stoop, kneel, crouch, crawl, climb ramps, and climb stairs; and have no exposure to temperature extremes, unprotected heights, or hazardous machines. He requires the freedom to change positions every 30 minutes while on task and at the workstation.

6.  Since January 13, 2015, the claimant has been unable to perform any past relevant work (20 CFR 404.1565).

7.  Prior to the established disability onset date, the claimant was a younger individual age 18-44 and 45-49. Applying the age categories non-mechanically, and considering the

---

[1] "Sedentary" work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

additional adversities in this case, on the date of this decision, the claimant's age category changed to an individual closely approaching advanced age (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Prior to the date of this decision, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills. Beginning on the date of this decision, the claimant has not been able to transfer job skills to other occupations (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Prior to the date of this decision, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. Beginning on the date of this decision, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 404.1560(c) and 404.1566).

12. The claimant was not disabled prior to the date of this decision but became disabled on that date and continues to be disabled (20 CFR 404.1520(g)).

Tr. 11-20.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits protectively filed on December 6, 2017, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on the date of this decision. Tr. 21.

## ANALYSIS

Plaintiff asserts three points of error. First, Plaintiff argues that the ALJ's RFC finding with regard to a sit/stand option was not based on substantial evidence. *See* ECF No. 15-1 at 14-19. Next, Plaintiff argues that the ALJ erred in selectively rejecting the favorable portions from the opinions of Edward Simmons, M.D. ("Dr. Simmons"), and Elizabeth Printup, FNP ("Ms. Printup"). *See id.* at 20-22. Finally, Plaintiff argues that the ALJ failed to consider the opinion of

John Halpenny, M.D. ("Dr. Halpenny"), who conducted an independent medical evaluation ("IME") in relation to Plaintiff's worker's compensation claim. *See id*. at 22-24.

In response, the Commissioner argues that the ALJ fulfilled her responsibility to assess the opinions and other evidence of record and arrived at an RFC finding that was supported by substantial evidence in the record as a whole, including the opinion of consultative examiner Michael Rosenberg, M.D. ("Dr. Rosenberg"), the findings of state agency medical consultants D. Brauer, M.D, ("Dr. Brauer"), and David Braverman, M.D. ("Dr.  Braverman"), Plaintiff's treatment records, and his self-reported activities. *See* ECF No. 18-1 at 6-16. Further, argues the Commissioner, substantial evidence supports the sit/stand option in the RFC finding, consistent with the jobs identified at step five. *See id*. at 9-13. The Commissioner also argues that contrary to Plaintiff's contention, the ALJ explicitly considered Dr. Halpenny's September and October 2017 IME reports. *See id*. at 14.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ appropriately analyzed the opinion evidence, as well as Plaintiff's treatment records and his reported activities of daily living, and reasonably concluded that, despite his impairments, Plaintiff was capable of performing a reduced range of sedentary work. Accordingly, the Court finds that the ALJ's RFC determination was supported by substantial evidence.

The record reflects that Plaintiff injured his back at work on July 18, 2014, while pulling a pallet.  Tr. 293. He reported that he slipped and fell on his back and/or buttocks, after which he heard a "pop" in his lower back and experienced "immediate" pain in his lower lumbar area. Tr. 531, 791. He was treated conservatively with physical therapy and ibuprofen and returned to work. Tr. 273-76, 293. On January 13, 2015, Plaintiff fell on ice which led to severe accelerated pain in the lumbar and lower thoracic region. Tr. 170, 293.

Plaintiff reported that Ms. Printup at Foothill Medical Group ("Foothill Medical") had been his primary care provider since 2014, and he sees her for "everything." Tr. 208. Plaintiff treated with Foothill Medical on a regular basis through 2019. Tr. 542-74, 678-97. During this time period he had a total of 19 appointments, 12 of which were with Ms. Printup. Tr. 542-548, 566-74, 679-97.

On March 3, 2015, Plaintiff initiated pain management treatment with Eugene Gosy, M.D. ("Dr. Gosy"). Tr. 293-95. Plaintiff reported severe pain in his lumbar and thoracic spine. Tr. 293. On examination, Plaintiff showed spinal tenderness, diminished lumbar lordosis, hypoactive reflexes, and weakness in the legs, but he still showed 5/5 upper extremity strength, negative straight leg raise ("SLR") testing at times, and intact sensation. Tr. 294. Dr. Gosy ordered a thoracic MRI and started Plaintiff on Tizandine for mechanical pain and hydrocodone for incidental pain. Tr. 295. Dr, Gosy opined that Plaintiff was 66% temporarily disabled. Tr. 295.

Although Plaintiff reported starting treatment with Dr. Simmons in 2015 (Tr. 209), the earliest report. in the record is from May 23, 2016 (Tr. 451). At that visit, Plaintiff was "quite symptomatic with ongoing thoracic discogenic pain and associated radicular symptoms around both chest wall." Tr. 451. Lateral bending and twisting movements were painful, and range of motion ("ROM") in the thoracolumbar spine was restricted, with 30% flexion, 20% extension, and

20% lateral bending to the left and right. Tr. 452. Dr. Simmons noted that Plaintiff was going to

undergo a fusion from T5 to T12 and opined that he had a temporary 100% impairment. Tr. 452.

An MRI of the thoracic spine taken on March 25, 2015 revealed mild bulging at T5-6, T7-

8, and T9-10. Tr. 291. There were also compression fractures from T6 to T11. *Id*. On April 9,

2015, Plaintiff underwent a facet block at L4-5 and L5-S1. Tr. 297. He reported that the procedure

provided 50% relief in the lumbar region for several days, but the pain had returned. *Id*.

On August 10, 2015, Plaintiff treated with Christine Klemp, FNP-C ("Ms. Klemp"), in Dr.

Gosy's office. Tr. 296-98. He was experiencing a sharp, stabbing, soreness in the lumbar spine

which was exacerbated with attempts to get out of bed, and with sitting or standing, even for brief

periods of time. Tr. 296. He had leg weakness and reported falling recently, and his pain was

greater than 10/10 on the visual analog scale at times. *Id*.

Plaintiff followed up with Ms. Klemp on October 12, 2015. Tr. 300-02. Plaintiff reported

that he was unable to fill his prescription for hydrocodone because it was not covered by Workers

Compensation. Tr. 300. He reported lumbar pain that extended into the thoracic region in an

intense, stabbing, sharp pain, and standing, lifting, sitting or walking for prolonged periods of time

increased his pain level. *Id*. Ms. Klemp continued Plaintiff on Robaxin and Lidocaine for pain (Tr.

301-302), and she requested approval for hydrocodone (Tr. 302).

On February 18, 2016, Plaintiff followed up with Tanya Geist, RPA-C ("Ms. Geist"), in

Dr. Simmons' office. Tr. 448. Workers Compensation had not authorized the recommended

surgery, and Plaintiff continued to have severe pain through his mid and lower thoracic spine

radiating to his chest walls. *Id*. On physical examination, Plaintiff had a "very guarded posture"

and "ambulate[d] with a slow cautious gait." Tr. 449. There was significant tenderness and

hypersensitivity over the thoracic spine, and Plaintiff had decreased ROM in the lumbar spine. *Id*.

449). Ms. Geist again requested authorization from Workers Compensation for a posterolateral fusion from T5-T12. *Id*. She opined that Plaintiff had a total disability with regards to his regular work and a marked partial disability with regards to all work Tr. 450.

On June 8, 2016, Plaintiff underwent posterior T5-T12 fusion surgery. Tr. 350-55. Thereafter, on June 13, 2016, he had a post-operative follow-up visit with Andrew Dybalski, RPA-C ("Mr. Dybalski"), in Dr. Simmons' office. Tr. 418-21. Plaintiff was using a cane to ambulate; he was wearing a TLSO brace; and his wound was healing. Tr. 419-20. Mr. Dybalski noted that Plaintiff should continue to avoid any bending or twisting of his thoracic spine and opined that Plaintiff was temporarily totally disabled from all work. Tr. 420.

On June 22, 2016, Plaintiff followed up with Ms. Geist and reported intermittent episodes of positional severe right shoulder pain. Tr. 422. At a subsequent follow-up visit on July 21, 2016, Plaintiff reported using oxycodone up to 6 tablets per day and methocarbamol three times per day due to consistent spasms. Tr. 425. He had a somewhat forward flexed posture and ambulated with a stable gait. Tr. 426.

On October 12, 2016, Plaintiff followed up with Ms. Geist. Tr. 429-32. He reported that Worker's Compensation denied his pain medication six weeks after surgery. Tr. 429. He was having difficulty with all activities of daily living, including standing, sitting and walking, and he also reported loss of sleep due to pain. *Id*. He was wearing his back brace and reported using his external bone stimulator daily. Tr. 429-30. Ms. Geist prescribed pain medication and again opined that Plaintiff had a 100% temporary impairment. Tr. 431.

Plaintiff followed up with Dr. Simmons on January 12, 2017 (seven months post-op). Tr. 433-35. Plaintiff reported that he had very good relief of his radicular pain but was still having residual pain in the midline thoracic region. Tr. 433, 434. He was still using his back brace. Tr.

433. Dr. Simmons opined that Plaintiff could ambulate as much as he wished but to be careful with his body movements and activities. Tr. 434. He still opined that Plaintiff was temporarily 100% impaired due to his work-related injury. Tr. 435.

On February 8, 2017, Plaintiff started physical therapy at Olean Physical Therapy Professionals, PLLC. Tr. 509-10. He reported tolerable post-surgical thoracic pain at 7/10. Tr. 509. His symptoms increased while bending, sitting, and standing, and he reported difficulty sleeping and limited tolerance for activity. *Id*. His goal was to restore pain-free functional mobility and increase strength. *Id*. He attended physical therapy sessions on February 10, 13, 17, 22, 24, 27; March 1, 6, 8, 13, 17, 20, 22, 27, 29; May 1, 4, 8, 11, 18, 25; June 1, 21, 27, 30. Tr. 482-508. During his course of treatment, Plaintiff reported overall decreased pain, as well as increased strength and improved functional status. *See, e.g.*, Tr. 494, 497, 499, 503 504, 505, At his June 1 visit, Plaintiff reported that his "back isn't too bad as long as the weather is good." Tr. 486.

On April 14, 2017, Plaintiff followed up with Mr. Dybalski from Dr. Simmons' office. Tr. 436-39. He reported that he was pleased with the surgery overall but was still experiencing "good and bad days." Tr. 436. Mr. Dybalski noted that Plaintiff's "degree of pain was directly related to his activity level but [could] also be influenced by changes in weather." Tr. 437. Plaintiff was wearing a TLSO brace and reported he was doing aquatic physical therapy two to three times per week. *Id*. Mr. Dybalski reviewed x-rays of Plaintiff's thoracic spine and stated that the "retained instrumentation spanning T5-T12 appears to be in satisfactory position without signs of loosening or migration." Tr. 438. Mr. Dybalski told Plaintiff that he could progressively increase his activity level with tolerance to his pain and he could ride his Harley-Davidson motorcycle (which Plaintiff described as "having a smooth ride without excessive vibrating"), but he should not excessively bend or twist at his back. Tr. 438. Mr. Dybalski referred Plaintiff for additional physical therapy

and prescribed methocarbamol and Celebrex for pain. *Id*. He opined that Plaintiff had a temporary 100% impairment and a total disability with regards to his regular work and all work. Tr. 439.

Plaintiff attended a Workers Compensation IME with Dr. Halpenny on September 29, 2017. Tr. 531-35. Although Plaintiff reported some ongoing pain, he noted improvement with surgery. Tr. 533. He also reported that he could do personal care, light housework, and vacuuming. *Id*. On examination, Plaintiff showed limited ROM and pain with straight leg raise testing, but he otherwise showed a normal gait, 4/5 to 5/5 strength, intact sensation, and good grip strength. Tr. 534. After reviewing Plaintiff's records and performing a physical exam, Dr. Halpenny opined that Plaintiff had reached maximum medical improvement. Tr. 535.

Similar findings were noted at another IME with Dr. Halpenny in October 2017. Tr. 536-540. Dr. Halpenny opined that Plaintiff could return to work with the following restrictions: lifting limit of 10 pounds occasionally; bending to floor or near the floor once an hour; stair climbing once or twice an hour; sitting limit 20 or 30 minutes; driving limit about the same; standing limit about 20 minutes; walking limit 20 or 25 minutes; change positions frequently; and avoid extensive overhead work. Tr. 540.

On October 12, 2017, Plaintiff followed up with Ms. Printup. Tr. 514-15. He complained that his back is always painful but noted that medications "help relieve pain and make it tolerable to carry out ADLs (activities of daily living)." Tr. 514.

On November 16, 2017, Plaintiff followed up with Luke Martinic, PA-C ("Mr. Martinic"), in Dr. Simmons' office for a post-operative visit. Tr. 444-47. Plaintiff reported he was pleased with the surgery as it eliminated the radiating pain to his flank; however, he continued to experience some mid back pain that was exacerbated by the changes in the weather, sitting or standing, and rotational movements. Tr. 444. He had completed hydro and land therapy and had

reached maximum medical improvement. *Id*. On examination, Plaintiff stood with a kyphotic thoracic posture and a hypolordotic lumbar posture; he had a slightly wide-based gait pattern without the use of any assistive device; decreased ROM; positive SLR; and reduced strength with knee flexion/extension at 4+/5. Tr. 445. Dr. Simmons ordered a functional capacity evaluation ("FCE") upon Plaintiff's request and continued to opine that Plaintiff had a temporary 100% impairment and a temporary total disability for all work. Tr. 444-45.

On December 1, 2017, Mark Howard, PT, DPT, OCS ("Mr. Howard") conducted an FCE of Plaintiff. Tr. 787-99. He found that Plaintiff could never lift, carry, pull, climb, stoop, kneel, crouch or handle; he could occasionally stand, walk, sit, push, reach and finger; and he could frequently balance. Tr. 790. Mr. Howard noted that Plaintiff had increased pain when he tried to lift or carry any weight and limited tolerance to static positioning and walking. Tr. 790.

On January 12, 2018, consultative examiner Michael Rosenberg, M.D. ("Dr. Rosenberg"), examined Plaintiff in connection with his claim for Social Security Disability benefits. Tr. 645-48. Examination findings included a normal gait and stance, ability to squat fully and rise from a chair without difficulty, and full (5/5) motor strength with no evident muscle atrophy in upper and lower extremities. Tr. 646. Dr. Rosenberg diagnosed mild back pain with limited range of motion and obesity (Tr. 647) and assessed mild restrictions for activity that required prolonged uninterrupted bending and heavy lifting and carrying secondary to his mild back pain, and mild restrictions for activities that require carrying heavy objects, performing overhead activity, and activity requiring pulling, pushing, reaching or repetitive use of the arms as range of motion of shoulders elicits back pain (Tr. 648).

On February 2, 2018, Plaintiff had a follow-up visit with Dr. Simmons to discuss his level of permanent impairment for Workers Compensation. Tr. 763-66. Dr. Simmons noted that Plaintiff

could not perform his past work as a truck driver (Tr. 763), but he discussed the possibility that Plaintiff could find work at the sedentary level where he could change positions between sitting and standing as needed, with no bending or lifting requirements (Tr. 763-764). Thereafter, on April 6, 2018, Dr. Simmons noted that since the surgery, Plaintiff reported good relief of the radiating radicular symptoms around his chest walls and some relief of the severe thoracic axial pain, but he continued to have discomfort throughout the thoracic region which limits his activities. Tr. 655. Dr. Simmons opined that Plaintiff could lift up to 5 pounds. *Id*. The record indicates that Plaintiff continued treating with Dr. Simmons through July 2019. *See* Tr. 756-58; 749-55; 742-48); 739-41, 735-38.

On May 9, 2018, Plaintiff had a Workers Compensation follow-up visit with Ms. Printup, wherein Ms. Printup repeated Dr. Simmons' February 2018 assessment that Plaintiff would need a job with frequent position changing between sitting and standing with no bending or lifting. Tr. 691-92. The record indicates that Plaintiff continued treating with Ms. Printup through 2018 and 2019. *See* Tr. 678-90.

As noted above, Plaintiff argues that the ALJ did not properly consider the medical opinion evidence and arrived at an RFC finding that was not based on substantial evidence. *See* ECF No. 15-1 at 14-24. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. §

416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Furthermore, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017)

(The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed his claim on December 6, 2017, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not

required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the

Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Here, the ALJ complied with the regulations, and contrary to Plaintiff's contention (*see* ECF No.15-1 at 18, 21-22), the ALJ considered the most important factors of supportability and consistency and found the opinion of Dr. Simmons and Ms. Printup that Plaintiff should be limited to work with frequent position changes between sitting and standing with no bending and lifting only "somewhat persuasive. Tr." 17-18, 691, 704-05. Considering the relevant factors, the ALJ reasonably found that the opinion that Plaintiff could do no lifting was inconsistent with the overall record, including Plaintiff's improvement after surgery, full (5/5) upper extremity strength, and ability to perform activities of daily living such as light cleaning and cooking. Tr. 18, 62, 66-67, 69-72, 215-19, 433-34, 440, 533-34, 646-47. *See* 20 C.F.R. § 404.1520c(c)(1)-(2) (explaining that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)" and the "more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be.").

For these same reasons, the ALJ found more persuasive the April 2018 statement from Dr. Simmons that Plaintiff could lift up to five pounds, and the ALJ therefore included this limitation in the RFC finding. Tr. 18, 655. In addition, Dr. Simmons checked a form box for "occasional" sitting (Tr. 706, 765), but at the same time he narratively assessed that Plaintiff could perform sedentary work where he could change position between sitting and standing as needed (Tr. 704-05, 763-64). As Plaintiff notes, sedentary work generally requires sitting for about 6 hours of an 8-hour workday, while occasional sitting is defined as sitting for up to 1/3 of the workday, or 2 hours and 40 minutes. *See* ECF No. 15-1 at 22 (citing SSR 96-9p).

The premise of Plaintiff's argument is that a moderate sitting limitation is inconsistent with sedentary work, and therefore demanded additional functional restrictions beyond what the ALJ included. However, that is not necessarily the case. Sedentary work requires an individual to "remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2–hour intervals." *Natasha D. v. Comm'r of Soc. Sec.*, No. 19-CV-515, 2020 WL 1862966, at *9 (N.D.N.Y. Apr. 13, 2020). It does not require a worker "to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also Carroll v. Colvin*, No. 13-CV-456S, 2014 WL 2945797, *4 (W.D.N.Y. June 30, 2014) (noting that several courts "have upheld an ALJ's decision that the claimant could perform light or sedentary work even when there is evidence that the claimant had moderate difficulties in prolonged sitting or standing"); *Lisa P. v. Comm'r of Soc. Sec.*, No. 19-CV-1155-FPG, 2021 WL 826715, at *3-4 (W.D.N.Y. March 4, 2021) (finding no error where ALJ implicitly adopted consultative examiner's "moderate" sitting limitation into RFC finding for sedentary work and collecting cases). Thus, the ALJ reasonably concluded that Dr. Simmons and Ms. Printup's notation of the need for frequent or as needed position changes with no bending (Tr. 691, 705) was not inconsistent with the RFC finding for a reduced range of sedentary work. Tr. 17-18.

Furthermore, Dr. Simmons did not quantify or further define the term "frequent" in his February 2018 opinion (Tr. 705), and he did not specifically include any limitation regarding position changes in his subsequent notation in April 2018 (Tr. 655). 17-18. Plaintiff suggests that the ALJ based the 30-minute position change limitation in the RFC on VE testimony. *See* ECF No. 15-1 at 18 (citing Tr. 89-90). However, in response to a specific question from Plaintiff's attorney, the VE further testified that the same jobs could also be performed with the need to

change position between sitting and standing every 20 minutes; yet, the ALJ ultimately did not incorporate that further limitation, even though such would have been fully consistent with the jobs identified by the VE at step five. Tr. 14, 90-91.

In addition to considering the opinions from Dr. Simmons and Ms. Printup, other substantial evidence supports the RFC finding that Plaintiff could sit for 30 minutes at a time, or even 20 minutes at a time (consistent with the jobs identified at step five), before needing to switch to standing. For example, in December 2017, Plaintiff reported to physical therapist Mr. Howard that he could sit for 60 minutes with frequent weight shifts before he required a positional change, and Plaintiff demonstrated during Mr. Howard's FCE that he could sit for 20 minutes. Tr. 18, 797. In March 2019, cardiologist John Visco, M.D.  ("Dr. Visco"), also examined Plaintiff and noted that "his activities are certainly limited in the sense that he is not able to walk fast, and he finds it much more comfortable to sit and smoke a cigarette [than] he does to get off his butt[ocks] and move." Tr. 721. In July 2019, Dr. Visco noted that Plaintiff was able to complete a stress test during which "he exercised and did quite well," and at that time denied chest discomfort and was "fully active." Tr. 733.

In addition, later treatment records from Dr. Simmons indicated that trigger point injections helped Plaintiff's symptoms to some extent, and Plaintiff was increasing his activity level as tolerated. Tr. 731, 742. Moreover, as the ALJ noted, Plaintiff testified during the October 2019 hearing that he applied online for "hundreds of [truck dispatching] jobs" that would allow him to sit and stand for 20 minutes at a time. Tr. 15, 19, 61-62, 65-66. Plaintiff also testified that he was able to drive to appointments and the store, and he drove to the hearing. Tr. 15, 66. This evidence further supports the ALJ's RFC finding for sitting 30 minutes at a time, and is consistent with the step five jobs, which allow for even 20 minutes of sitting at a time.

Plaintiff next argues that the ALJ erred by failing to articulate her reasons for rejecting the portion of Dr. Simmons and Ms. Printup's opinion assessing that Plaintiff could do no bending or stooping. *See* ECF No. 15-1 at 21-22 (citing Tr. 691, 704-05). However, at least one of the jobs identified at step five—surveillance system monitor—does not involve any stooping or bending. *See* Tr. 19-20, 88; Dictionary of Occupational Titles ("DOT") No. 379.367-010 (surveillance system monitor), 1991 WL 673244. In addition, as the VE described it, the job of telephone survey work as it is currently performed in the national economy is "strictly sedentary" and involves using a telephone and mouse (computer), which does not imply any significant amount of stooping or bending. *See* Tr. 19-20, 88-89. Accordingly, even if the ALJ had specifically included an RFC limitation to no stooping or bending, this would not change the outcome at step five. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (holding remand not warranted without "reasonable likelihood" that ALJ's decision would have been different absent error); *see also Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009) (party challenging agency decision must demonstrate that error was prejudicial). Furthermore, there is no requirement that the ALJ accept every limitation in a medical source's opinion. *See Pellam v. Astrue*, 508 F. App'x 87, 89 (2d Cir. 2013) (holding that the ALJ properly declined to credit certain conclusions in a medical source's opinion that were inconsistent with other evidence of record).

As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). Thus, opinion evidence is only one type of evidence that an ALJ is required to consider. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("we will assess the residual functional capacity based on all the relevant medical and other evidence in your case record"); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (explaining that the adjudicator will assess the RFC based on all the

relevant evidence in the case record); 20 C.F.R. §§ 404.1513(a)(1),(4), 416.913(a)(1),(4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record). *Matta*, 508 F. App'x at 56 ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole.").

Here, the ALJ's RFC finding is largely consistent with the opinions of Dr. Simmons and Ms. Printup, as well as other substantial evidence, including the treatment records, the other medical opinion evidence, and Plaintiff's activities of daily living. For example, as the ALJ noted, treatment records before his thoracic fusion surgery in June 2016 showed that Plaintiff did not require an assistive device and he maintained full (5/5) strength in his upper extremities. Tr. 15-16, 294, 298, 301, 305, 449, 452. After his surgery, treatment records document general improvement and stabilization, with Plaintiff reporting good relief from his radiculopathy (and medication helped his pain) and examinations revealing a normal or slightly wider-based gait without the use of any assistive device and generally intact neurological findings. Tr. 16, 433-34, 436-37, 441, 444-45, 545, 682-83, 705, 710, 730, 744, 750, 757, 764.

The ALJ also considered the opinions of consultative examiner Dr. Rosenberg and state agency reviewing physicians Dr. Brauer and Dr. Braverman. Tr. 18. As the ALJ explained, Dr. Rosenberg's assessment of mild physical limitations (Tr. 645-46) was inconsistent with the overall record, including Plaintiff's history of ongoing treatment, medication, therapy, and need for surgery. *Id*. The ALJ similarly found Drs. Brauer and Braverman's opinion that Plaintiff could perform light work was inconsistent with the overall record, including Plaintiff's continued pain

and need for surgery, and reasonably assessed additional limitations. Tr. 18, 649-54, 656-57. Thus, while the ALJ found portions of these opinions not persuasive, she fully considered them in her analysis and explained her rationale for incorporating additional limitations based on her review of the other record evidence, thus providing additional support of the RFC finding. Additionally, as noted above, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino*, 312 F.3d at 588 (an ALJ's duty is to resolve genuine conflicts in the record, and an ALJ is free to reject portions of medical opinion evidence not supported by evidence of record).

Plaintiff's final point of error argues that the ALJ failed to consider the opinions of Dr. Halpenny. *See* ECF No. 15-at 22-24. However, contrary to Plaintiff's contention, the ALJ explicitly considered Dr. Halpenny's September and October 2017 IME reports, which revealed findings including a normal gait, intact sensation, and no evidence of wasting in the lower extremities, and a conclusion that Plaintiff could return to work with limitations which were consistent with the RFC finding. Tr. 16-17, 531-40. Specifically, Dr. Halpenny concluded that Plaintiff could lift 10 pounds occasionally, bend to the floor or near the floor once per hour, climb stairs once or twice per hour, sit for 20 to 30 minutes, stand for about 20 minutes, walk 20 to 25 minutes, change position frequently, and avoid extensive overhead work, which is, for all of the same reasons discussed above, consistent with the RFC finding for a reduced range of sedentary work and the specific jobs identified at step five. Tr. 14, 19-20, 88-89, 540.

Moreover, the ALJ reasonably and appropriately considered Plaintiff's activities of daily living in the RFC finding, including activities that involved sitting and standing. For example, Plaintiff showered and dressed himself, cooked, drove a car, and did light cleaning, laundry, and shopping. Tr. 15-18, 66-67, 69-72, 215-19, 300, 304, 438, 533-34, 545, 646. He also applied for sedentary truck dispatch jobs that could permit him to sit and stand for 20 minutes at a time. Tr.

15, 19, 61-62, 65-66, 791. Thus, Plaintiff's activities of daily living further support the RFC finding for a reduced range of sedentary work. Tr. 14-18. *See* 20 C.F.R. § 404.1529(c)(3)(i) (An ALJ may consider the nature of a claimant's daily activities in evaluating the consistency of allegations of disability with the record as a whole.); *Lewis v. Colvin*, 548 F. App'x 675, 677 (2d Cir. 2013) (ALJ's RFC finding supported by substantial evidence including activities of daily living); *Ewing v. Comm'r of Soc. Sec.*, No. 17-CV-68S, 2018 WL 6060484, at *5 (W.D.N.Y. Nov. 20, 2018) ("Indeed, the Commissioner's regulations expressly identify 'daily activities' as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.") (citing 20 C.F.R. § 416.929(c)(3)(i)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (claimant's abilities to watch television, read, drive, and do household chores supported ALJ's finding that his testimony was not fully credible).

As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the entire record, including the treatment reports, the medical opinions, and Plaintiff's activities of daily living, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 15) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 18) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.


DON D. BUSH
UNITED STATES MAGISTRATE JUDGE